UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

A.M.C. (XXX-XX-8533)                          CIVIL ACTION NO. 14-cv-0741

VERSUS                                         JUDGE HICKS

U. S. COMMISSIONER SOCIAL                      MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

A.M.C. ("Plaintiff") was born in 1975, earned a GED, and has worked in the past as a cashier, waitress, and front desk reception clerk. She applied for disability benefits, alleging an onset date of May 1, 2009, based on mental health problems. ALJ John A. Peebles conducted a hearing and issued a decision that found Plaintiff had substantial limitations but was not completely disabled. The Appeals Council denied a request for review, and Plaintiff filed this civil action to seek judicial review.

Plaintiff assigns as errors that the ALJ erred in (1) rejecting the opinions of a treating psychiatrist and an examining psychologist without sufficient basis and (2) finding that Plaintiff's testimony was not completely credible. The undersigned agrees that the ALJ did not have good cause to ignore the treating psychiatrist's opinion about Plaintiff's ability to regularly attend work. For that reason, as explained below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.

**Relevant Evidence**

Medical records from before the onset date show that Plaintiff was treated at the LSU-HSC. She went to the ER in March 2008 with a complaint of panic attacks. Plaintiff reported that she had a history bipolar disorder and anxiety and had been on medication years earlier but had weaned herself off of it. She had recently broken up with her fiancé, and she wanted to be back on medications due to increasing anxiety and depression. She was also seen as an outpatient in the weeks that followed. She was diagnosed as having depressive disorder, bipolar disorder, and anxiety disorder. Medications were prescribed. She reported by February 2009 that she had again stopped taking her medications. Her GAF assessment at these visits ranged from 50 (indicating the upper range of serious symptoms) to 65 (indicating mild symptoms). Tr. 431-44.

Plaintiff received mental health treatment from Shreveport Mental Health Center beginning in March 2010. She noted a history of drug and alcohol abuse but she said she had been clean for some time and was participating in AA. She had multiple stressors involving children and parenting (including the involvement of child protective services due to a spanking incident with a four-year-old son). A daughter had been committed to Brentwood due to cutting. Dr. Suzanne Woodard assessed Plaintiff in April 2010 as depressed with a congruent, somewhat blunted affect. Her thought process was circumstantial, and excessive elaboration required frequent redirection. Dr. Woodard assessed a GAF of 60 (moderate symptoms). Tr. 373-84.

Plaintiff began attending weekly psychotherapy sessions in 2010. Notes indicate that she was also maintaining sobriety by attending two AA or similar meetings each week. Notes from the sessions indicate that Plaintiff had her ups and downs in dealing with her children and general mental state. Tr. 445-72. Records from the mental health center show that Plaintiff initially had good attendance when she started there in March 2010. She began having problems with consistent attendance by April 2011, and by June 2011, she had violated the program's attendance policy. She nonetheless stated in July 2011 that her then current mental health medication was working. Tr. 371.

Psychologist Wendi LaBorde, PhD, performed a consultative mental examination in October 2010. Plaintiff reported that she was then residing with a five-year-old son and 13-year-old daughter who had her own history of mental illness. She reported a general history of physical, emotional, and sexual abuse. Her speech was 100% intelligible but almost whispering level and in a rambling pattern. She exhibited an irritable mood that made a negative impact on her ability to function in a one-on-one setting, and she had a history of interpersonal problems.

Plaintiff described to Dr. LaBorde her medical history, including in-patient treatment for bipolar disorder and a current prescription for Lexapro. She was then receiving services through Shreveport Mental Health. Her last job was at Thrifty Liquor in May 2009. It lasted six weeks. Plaintiff said she quit due to problems with childcare for her son. She had held a number of prior jobs, but she found work to be too stressful. She could not maintain employment because she "can't deal with things" and "my mind does not shut up." Her pace

and persistence were found to be within normal limits, and there were no problems with motor skills. There was no formal cognitive testing, but her overall level of intellectual functioning appeared to be in the average range. Dr. LaBorde stated that Plaintiff appeared to meet the criteria for a diagnosis of bipolar disorder NOS, poly substance dependence - in remission, and provisional anxiety disorder NOS. Dr. LaBorde issued this general report, but she did not make any specific findings of functional limitations. Tr. 365-67.

Plaintiff was first seen by Dr. Kimberly Law, a psychiatrist, in April 2012. Dr. Law completed an impairment questionnaire in July 2012. The Commissioner states that the record shows only one 15-minute visit for treatment in May 2012 (Tr. 533) by Dr. Law prior to the issue of the questionnaire, but Dr. Law wrote on the questionnaire that she managed Plaintiff's medications monthly and provided counseling weekly. Her diagnosis was bipolar disorder NOS, and her prognosis was that with proper and long-term medication management and counseling Plaintiff could live independently and avoid hospitalization.

Dr. Law assessed several categories of function such as memory, concentration, and social interactions. She found that Plaintiff had mild to moderate limitations in most categories, but she found that Plaintiff had a marked limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance. She also found a marked limitation in the ability to complete a normal work week without interruptions from psychologically based symptoms and the ability to perform at a consistent pace without an unreasonable number and length of rest periods. She wrote that Plaintiff would, in the event of a depressive episode, likely withdraw from or not attend or

perform acceptably in a work setting. She opined that Plaintiff's symptoms precluded her from tolerating even low stress environments. Tr. 513-20.

The ALJ conducted a hearing in October 2012. Plaintiff testified that she was living in an apartment with her children, age 15 and 7, and got by with benefits received by the children, food stamps, and Section 8 housing benefits. Her boyfriend drove her to the hearing, and she said she had trouble driving because of anxiety. Plaintiff did not report any problems with the physical demands of her past jobs as a cashier, waitress, and the like. When asked what prevented her from working now, Plaintiff said that even with her medications she gets nervous and anxious in public. She has to wait for a good day to be able to go out and take care of her personal business. She has only two or three good days out of a month where she can think clearly, does not have to struggle for her words, and her nerves aren't short.

Plaintiff said her medications helped alleviate depression, but she still experiences anxiety and panic attacks. On bad days, she can't get out of bed or even have a TV or radio on. Plaintiff said that she had a "lot of trouble with my memory" and that people "really irritate me." She claimed problems with focus and concentration, and she said she gets angry often at the smallest things. Tr. 64-100.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in

Case 5:14-cv-00741-SMH Document 9 Filed 02/23/16 Page 6 of 12 PageID #: 652

cases such as Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). He found that Plaintiff had not worked since her onset date (step one). He found that she suffered from anxiety disorder and bipolar disorder, which were severe within the meaning of the regulations (step two) but not so limiting as to meet a listing (step three) that would mandate a finding of disabled without consideration of other factors.

Before going from step three to step four, the ALJ assesses the claimant's residual functional capacity ("RFC") by determining the most the claimant can still do despite her limitations. 20 C.F.R. §§ 404.1520(a)(4) and 404.1545(a)(1). The claimant's RFC is then used at steps four and five to determine if she can still do her past relevant work or adjust to other jobs that exist in the national economy. 20 C.F.R. § 404.1520(e).

The ALJ determined that Plaintiff had the RFC to perform the demands of light work as defined in the regulations, except that she must be limited to jobs involving simple, routine, repetitive tasks; she could have only occasional interaction with supervisors and co-workers; she could not have interaction with the general public; and she could not do jobs involving production rate or pace work. Plaintiff was also limited to jobs involving only occasional decision making.

The ALJ found that those limitations did not allow Plaintiff to perform any of her past relevant work (step four) but did allow her to perform the demands of other jobs (step five). He relied upon the testimony of a vocational expert ("VE") that a person meeting Plaintiff's vocational description could perform the demands of jobs such as housekeeper or cleaner-polisher.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Dr. Law's Opinion; Attendance Issues**

The questionnaire completed by Dr. Law asked her to rate Plaintiff's degree of limitation, ranging from none to marked, in several categories. Dr. Law assigned the most severe limitation, marked, to Plaintiff's ability to perform activities within a schedule and maintain regular attendance and punctuality. She also assigned a marked limitation to the ability to complete a normal work week without interruptions from psychologically based symptoms. The questionnaire form defined markedly limited as meaning the limitation "effectively precludes the individual from performing the activity in a meaningful manner."

The ALJ found that Plaintiff had a very limited RFC, and the RFC included most of the limitations suggested by Dr. Law. Some of the limitations found by the ALJ were even greater than those suggested by Dr. Law. For example, the ALJ found that Plaintiff could have no interaction with the general public, while Dr. Law found no evidence of limitation

in her ability to do so. Dr. Law found mild to moderate limitations in the ability to get along with co-workers and maintain socially appropriate behavior at work. The ALJ imposed a limitation of no more than occasional interaction with supervisors and co-workers. Dr. Law found mild or moderate limitations in the ability to carry out instructions, maintain attention, and sustain ordinary routine without supervision. The ALJ limited plaintiff to jobs that involved only simple, routine tasks that involved only occasional decision making, and that could not involve production rate or pace work.

The ALJ thus found that Plaintiff was as or more limited than found by Dr. Law, with the notable exception of the marked limitations related to attendance and the like. This was important. The VE testified that Plaintiff would not be able to perform either of the jobs he identified (or any other work) if Plaintiff had to be absent from work two days a month on a consistent basis, was off task 15 percent of the day on a consistent basis, or needed two additional 10-minute breaks on top of normal breaks. Tr. 104-05.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). But the treating physician's opinions are not conclusive. When good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The good cause exceptions that have been recognized include statements that are brief and conclusory, not

supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Id., citing Scott, 770 F.2d at 485.

The ALJ did address Dr. Law's assessment and stated that he gave it "partial weight." He said that most of Dr. Law's assessments were accounted for in the RFC, which is correct. He found that the GAF score (50) given by Dr. Law was "inconsistent with the other medical evidence." The record shows that Plaintiff had a GAF assessment by different healthcare professionals in that range over the many months at issue, but the ALJ could have reasonably based his statement on his view of Plaintiff's overall condition at that stage of her treatment. The more important point is how the ALJ addressed the attendance issue. He mentioned it in a single sentence: "As for attendance, medical evidence and the claimant's own testimony show that she is able to make several support meetings and medical appointments on a regular basis." Tr. 49. That was the extent of the reasoning given for discounting this finding.

There is evidence that Plaintiff reported to her counselors that she attended two meetings per week as part of her effort to maintain sobriety. See, e.g., Tr. 454. And when Plaintiff began psychotherapy with a counseling service, she initially "attended every appointment since her start of services" and was noted to attend "group meetings with her daughter." But within a few weeks it was noted that Plaintiff was attending individual sessions regularly but "has missed several groups due to illness and children's needs." A few months later, it was noted that Plaintiff "continues to have some obstacles with consistent attendance, but has not violated the attendance policy (four missed Group or IND appts in

a row)." Two months later, Plaintiff had "violated attendance policy and will no longer be receiving DBT therapy." Tr. 405.  The ALJ noted in his decision that Plaintiff "began to not show up for her scheduled appointments" and "was eventually dismissed from her mental health treatment program in June 2011 for failing to attend the scheduled sessions." Tr. 48.

Dr. Law completed a detailed questionnaire and made specific findings that she backed with written explanations.  The ALJ largely adopted her findings but discounted the attendance and consistency factors with no explanation other than his observations that Plaintiff had attended several support meetings and medical appointments.  The record, however, indicates that Plaintiff did not have a good history of attendance, to the point that she was terminated from a treatment program.

The ability to attend occasional treatment appointments is a far cry from maintaining regular work attendance to the degree the vocational expert indicated would be required. That said, the court would likely not disturb this finding if Plaintiff actually had a good attendance record at her treatment appointments.  But the record shows that the sole reason relied upon by the ALJ to discount the very specific findings made by Dr. Law is not well supported.  Under these circumstances, the ALJ's discounting of Dr. Law's findings was not supported by good cause, which deprives the decision of substantial evidence.

The appropriate remedy is to reverse the Commissioner's decision and remand this case for further proceedings consistent with this recommendation.  The court need not address the other issues raised in Plaintiff's appeal.  On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters.  See 20 C.F.R. §

404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), this case be remanded to the Commissioner for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

    THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of February, 2016.

                                    Mark L. Hornsby
                                    U.S. Magistrate Judge